UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

MICHAEL MILESKI,

                            Plaintiff,

v.

NANCY A. BERRYHILL,[1] ACTING
COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.

Case # 16-CV-6772-FPG

DECISION AND ORDER

## INTRODUCTION

Michael Mileski brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security that denied his application for disability insurance benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 8, 11. For the reasons that follow, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

On January 22, 2013, Mileski applied for DIB with the Social Security Administration ("the SSA"). Tr.[2] 146-53. He alleged disability since July 15, 2011 due to spine arthritis, a torn ACL in his right knee, and posttraumatic stress disorder ("PTSD"). Tr. 167-68. On July 17, 2014, Mileski and a vocational expert ("VE") testified at a videoconference hearing before

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security and is therefore substituted for Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).
[2] References to "Tr." are to the administrative record in this matter.

Administrative Law Judge Roxanne Fuller ("the ALJ"). Tr. 35-68. On October 10, 2014, the ALJ issued a decision finding that Mileski was not disabled within the meaning of the Act. Tr. 19-31. On April 19, 2016, the Appeals Council denied Mileski's request for review. Tr. 6-11. Thereafter, the Appeals Council granted Mileski two extensions of time to file a civil action in federal court. Tr. 1-5. On December 1, 2016, Mileski commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

**I.      The ALJ's Decision**

The ALJ's decision analyzed Mileski's claim for benefits under the process described above. At step one, the ALJ found that Mileski had not engaged in substantial gainful activity since the alleged onset date. Tr. 21. At step two, the ALJ found that Mileski has the following severe impairments: degenerative disc disease, torn right knee ACL, depression, anxiety, panic disorder, PTSD, and alcohol dependence. *Id.* At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 21-24.

Next, the ALJ determined that Mileski retains the RFC to perform sedentary[3] work with additional limitations. Tr. 24-29. Specifically, the ALJ found that Mileski can occasionally climb ramps, stairs, ladders, ropes, or scaffolds, and balance, stoop, crouch, kneel, and crawl; can occasionally be exposed to moving mechanical parts and unprotected heights; can occasionally operate a motor vehicle; can perform simple, routine, and repetitive tasks; and can occasionally have superficial interaction with coworkers and supervisors but cannot interact with the public. Tr. 24.

At step four, the ALJ relied on the VE's testimony and found that Mileski cannot perform his past relevant work. Tr. 29-30. At step five, the ALJ relied on the VE's testimony and found that Mileski can adjust to other work that exists in significant numbers in the national economy given his RFC, age, education, and work experience. Tr. 30-31. Specifically, the VE testified that Mileski could work as a final assembler, touch-up inspector, and polisher/packer/inspector of

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

optical goods. Tr. 31. Accordingly, the ALJ concluded that Mileski was not "disabled" under the Act. Tr. 31.

## II. Analysis

Mileski argues that remand is required because the RFC and credibility determinations are not supported by substantial evidence. ECF No. 8-1 at 18-29; ECF No. 12. These arguments are addressed in turn below.

### A. RFC Assessment

Mileski asserts that the RFC assessment is not supported by substantial evidence. Specifically, he argues that the mental RFC is a product of the ALJ's lay opinion because she "rejected every medical opinion" as to his mental functioning. The Court disagrees.

#### 1. Substantial Evidence

RFC is defined as "what an individual can still do despite his or her limitations." *Desmond v. Astrue*, No. 11-CV-0818 (VEB), 2012 WL 6648625, at *5 (N.D.N.Y. Dec. 20, 2012) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). To determine a claimant's RFC, "the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis." *Id.* (citing 20 C.F.R. § 404.1545(a)). "An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations." *Id.*

"[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Wilson v. Colvin*, No. 13-CV-6286P, 2015 WL 1003933, at *21 (W.D.N.Y. Mar. 6, 2015) (citation omitted). However, although "the RFC must be supported by medical opinions, it is ultimately the ALJ's duty to formulate the RFC after evaluating the

opinion evidence, treatment records, and the testimony of the claimant." *Davis v. Colvin*, No. 15-CV-6695P, 2017 WL 745866, at *11 (W.D.N.Y. Feb. 27, 2017). Thus, "the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in [her] decision," because she is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citation omitted) (summary order); *see also Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (citation omitted).

Here, the ALJ determined that Mileski retains the mental capacity to perform simple, routine, and repetitive tasks, but that he cannot interact with the public and can have only occasional, superficial interaction with coworkers and supervisors. Tr. 24. The record contained three medical opinions as to Mileski's mental ability to perform work-related functions: one from social worker Joan Chandler, one from consultative psychologist Christine Ransom, Ph.D., and one from state agency medical consultant T. Harding, Ph.D. Tr. 70-82, 375-79, 409-12, 438-40.

As will be discussed in greater detail below, the ALJ did not afford great or controlling weight to any of these opinions. However, the RFC assessment is consistent with portions of those opinions and with the objective medical evidence and is not a product of the ALJ's lay opinion.

### i. Ability to Perform Tasks

Dr. Ransom opined that Mileski has moderate difficulty performing simple tasks independently and learning simple new tasks, and that he has moderate to marked difficulty performing complex tasks. Tr. 378. Dr. Harding opined that he is moderately limited in understanding, remembering, and carrying out detailed instructions, but that he is not significantly limited in his ability to understand, remember, and carry out very short and simple instructions.

Tr. 78-79. Accordingly, the ALJ limited Mileski to performing simple, routine, and repetitive tasks. Tr. 24.

The ALJ also relied on the objective medical evidence to make this determination. Tr. 26-27. Although Mileski asserts that the ALJ failed to "tie the medical evidence to [her] specific findings" (ECF No. 12 at 1), she explicitly discussed the evidence that supported the RFC. Specifically, she explained that "[t]he objective medical findings varied month to month. Generally, they indicate regular impairments to [Mileski]'s mood and affect, and sporadic deficits to his speech, cognition, concentration, attention, memory, insight, and judgment." Tr. 27. The ALJ concluded that "[b]ased on the totality of the evidence, namely only sporadic, infrequent indications of more than moderate restrictions to his thought and cognition, . . . [Mileski] [i]s capable of simple, routine, and repetitive tasks." *Id.*

### ii. Social Functioning and Interacting with Others

Dr. Ransom opined that Mileski has moderate to marked difficulty relating adequately with others, and Ms. Chandler opined that he is moderately limited in maintaining social functioning. Tr. 378, 410, 439. Dr. Harding opined that Mileski has moderate limitation working in coordination with or in proximity to others without distraction, interacting appropriately with the public, accepting instructions and responding appropriately to supervisor criticism, and interacting socially. Tr. 79. Dr. Harding also opined, however, that Mileski is not significantly limited in his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Tr. 79. Accordingly, the ALJ determined that Mileski cannot interact with the public but can have occasional, superficial interaction with coworkers and supervisors. Tr. 24.

The ALJ also relied on the objective medical evidence when she assessed Mileski's social limitations. Tr. 26-27. The ALJ again tied the medical evidence to her specific findings and

7

explained that "based on [Mileski's] fluctuating and impaired mood, affect, speech, insight, and judgment, . . . [he] could have no interaction with the public and only occasional, superficial interaction with coworkers and supervisors." Tr. 27.

Thus, for the reasons stated and based on the medical opinions and objective evidence of record, the Court finds that the mental RFC assessment is supported by substantial evidence.

### 2. Weighing Medical Opinions

Mileski also asserts that the mental RFC assessment is not supported by substantial evidence because the ALJ improperly weighed the relevant medical opinions. Mileski is correct that the ALJ "did not rely upon a single opinion to formulate the RFC finding" and that she rejected portions of each medical source's opinion. However, the RFC assessment does not have to "perfectly correspond" with any of the medical source opinions that the ALJ cites in her decision. *See Matta*, 508 F. App'x at 56. Although the ALJ did not adopt any opinion as to Mileski's mental health in its entirety, she explicitly discussed and weighed each opinion pursuant to the SSA's regulations, which require the ALJ to "evaluate every medical opinion [she] receives, regardless of its source." *Pena v. Chater*, 968 F. Supp. 930, 937 (S.D.N.Y. 1997), *aff'd*, 141 F.3d 1152 (2d Cir. 1998); *see also* 20 C.F.R. § 404.1527(c). Unless the ALJ gives controlling weight to a treating source's opinion, she must consider several factors when she weighs a medical opinion including whether it is consistent with the record as a whole. 20 C.F.R. § 404.1527(c)(4).

#### i. Social Worker Chandler's Opinion

The ALJ summarized social worker Chandler's opinion and afforded it only "little weight" because "the medical evidence indicates only sporadic demonstrations of marked mental limitations, presumably because of heavy alcohol abuse. Otherwise, the medical evidence indicates only inconsistent deficits to [Mileski]'s speech, cognition, concentration, attention,

memory, insight, and judgment, as he just as often exhibited an intact ability in these areas." Tr. 28. The ALJ concluded that "the evidence does not support Ms. Chandler's opinion, as it indicates neither that [Mileski] had persistently marked mental limitations nor that he would require multiple work absences." *Id.* This was a proper reason to reject Ms. Chandler's opinion, because the ALJ is entitled to discount an opinion that is inconsistent with the record as a whole. *See* 20 C.F.R. § 404.1527(c)(4).

When the RFC assessment conflicts with a medical source's opinion, especially when that opinion would render the claimant disabled, the ALJ must explain why it was not adopted. *See* S.S.R. 96-8p, 1996 WL 374184, at *7; *see also Dioguardi v. Comm'r of Soc. Sec.*, 445 F. Supp. 2d 288, 298 (W.D.N.Y. 2006) (noting that the ALJ should have explained her choice "to disregard the evidence that was more favorable to plaintiff's claim"). Here, in accordance with this rule, the ALJ noted that she did not accept Ms. Chandler's opinion that Mileski would be absent from work four or more days per month, a limitation that would make her unemployable. Tr. 28, 66, 411, 441.

### ii. Drs. Ransom and Harding's Opinions

The ALJ also summarized consultative psychologist Dr. Ransom's examination findings and opinion. Tr. 26, 28-29. The ALJ afforded her opinion "some weight" because Mileski's "demonstration of intact behavior, socialization, language, thought, orientation, intellect, insight, and judgment, despite problems with eye contact, movement, speech, mood, affect, attention, concentration, and memory during the consultative examination suggests only moderate mental restrictions." Tr. 29. The ALJ further reasoned that "the rest of the record, which indicates only sporadic deficits to [Mileski]'s speech, cognition, concentration, attention, memory, insight, and judgment, suggests only moderate sustained restrictions." *Id.* The ALJ also concluded that Dr.

9

Ransom's reliance on terms like "moderate" and "moderate to marked" rendered her opinion "vague." Tr. 29.

Finally, the ALJ summarized the opinion of state agency medical consultant Dr. Harding. Tr. 29. The ALJ afforded her opinion "some weight" because it is consistent with Dr. Ransom's opinion. *Id.* The ALJ also noted, however, that the opinion is "vague" and that the "overall medical record does not support a finding of sustained marked limitations as it indicates only sporadic deficits to [Mileski]'s speech, cognition, concentration, attention, memory, insight, and judgment." *Id.* (citing Tr. 221-379, 385-408, 443-587).

The ALJ was entitled to discount both opinions based on their inconsistency with the other record evidence. *See* 20 C.F.R. § 404.1527(c)(4). She was also entitled to discount both opinions because they were vague. *See* 20 C.F.R. § 404.1527(c)(3) (the SSA will give more weight to a medical opinion that is well explained). Mileski asserts that the ALJ should have re-contacted Drs. Ransom and Harding and asked them to clarify their opinions. ECF No 8-1 at 23-24; ECF No. 12 at 4-5. However, the record contained no "obvious gaps" that would have prompted the ALJ to re-contact Drs. Ransom and Harding. *See* 20 C.F.R. § 416.912(b); *Rosa*, 168 F.3d at 79 n.5 (where there are no "obvious gaps" in the record and a "complete medical history" exists, the ALJ is not obligated to seek additional evidence).

Although Mileski is correct that the SSA's regulations allow the ALJ to contact a consultative examiner whose report is "inadequate or incomplete" (*see* 20 C.F.R. § 404.1519P(b)), Drs. Ransom and Harding's medical source statements were not "so vague as to render [them] useless" in evaluating Mileski's ability to work. *See, e.g.*, *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 347-48 (E.D.N.Y. 2010) (citation omitted) (finding that the consultative examiners' opinions were too vague to support the RFC determination because they were extremely brief,

used ambiguous terms, and lacked medical evidence to support their conclusions). Obviously these opinions were not "so vague as to render [them] useless," because the ALJ afforded each opinion some weight and relied on them to make the RFC determination. Moreover, both opinions address Mileski's mental abilities to perform work-related functions such as following and understanding instructions, maintaining attention and concentration, interacting with others, and the like. Tr. 78-80, 378; *see* 20 C.F.R. § 404.1545(c); S.S.R. 96-8p, 1996 WL 374184, at *5-6 (S.S.A. July 2, 1996) ("Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.").

For the reasons stated, the Court finds that the RFC determination is based on the medical opinions and objective evidence and that the ALJ properly weighed the relevant opinions. Accordingly, the ALJ did not err and the RFC assessment is supported by substantial evidence.

### B. Credibility

"The ALJ has the discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Jackson v. Astrue*, No. 1:05-CV-01061 (NPM), 2009 WL 3764221, at *7 (N.D.N.Y. Nov. 10, 2009) (citation omitted). The ALJ's credibility findings "must be set forth with sufficient specificity to permit intelligible plenary review of the record." *Phelps v. Colvin*, 20 F. Supp. 3d 392, 403 (W.D.N.Y. 2014) (quotation marks and citation omitted).

"[T]he court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain" if the finding is supported by substantial evidence. *Jackson*, 2009 WL 3764221, at *7 (quotation marks and citation omitted). "It is the function of the Commissioner, not the reviewing

court, to 'resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.'" *Id.* (citation omitted).

The ALJ must consider all of the claimant's statements about his symptoms and how those symptoms affect his daily activities and ability to work. 20 C.F.R. § 404.1529. However, the claimant's statements about his symptoms will not alone establish disability. *Id.* Thus, the ALJ must follow a two-step process when considering the claimant's alleged symptoms and their effect on his ability to work. The ALJ must first consider whether the medical evidence shows any impairment that "could reasonably be expected to produce the pain or other symptoms alleged[.]" *Id.* at § 404.1529(a). If such an impairment is shown, the ALJ must evaluate the "intensity and persistence" of the claimant's symptoms to determine the extent to which they limit his work capacity. *Id.* at § 404.1529(c)(1).

When the objective medical evidence alone does not substantiate the claimant's alleged symptoms, the ALJ must assess the credibility of the claimant's statements considering several factors, including the claimant's daily activities and medication taken and treatment received to alleviate symptoms. *Id.* at §§ 404.1529(c)(3)(i), (iv), (v).

Here, the ALJ found that Mileski's medically determinable impairments could reasonably be expected to cause the alleged symptoms but that his statements about his symptoms were "not entirely credible." Tr. 25. The ALJ determined that Mileski's allegations "lack credibility" because they were inconsistent with (1) the objective medical evidence, (2) medication and treatment received, and (3) his daily activities. Tr. 27-28.

### 1. Objective Medical Evidence

The ALJ determined that Mileski's allegations were not credible based on their "inconsistency with the objective medical record." Tr. 27. Specifically, the ALJ noted that "the

medical evidence does not corroborate his claims that he can only stand for ten minutes, walk for ten minutes, and sit for twenty minutes at a time, and must lie flat a couple times per day." Tr. 27. Instead, the ALJ concluded that "[t]he evidence indicates only an impaired gait and reduced range of motion of the back and knee, and it does not suggest limitations to sitting or a need to lie down." *Id.* (citing Tr. 221-365, 375-79, 380-83, 413, 464-587).

Mileski argues that the ALJ relied on her lay opinion and did not identify an actual inconsistency between the objective evidence and his allegations. ECF No. 8-1 at 26. The treatment notes that the ALJ cited, however, support her assertion that the objective evidence belies Mileski's claims. Mileski testified, for example, that lying flat is "usually the best thing" for his pain, but Mileski reported to his doctors on several occasions that lying down actually *aggravates* his back pain. *See, e.g.*, 293, 309, 311, 314, 316. Although consultative examiner Dr. Toor opined that Mileski has "moderate limitation sitting a long time," this opinion is less restrictive than Mileski's assertion that he cannot sit for more than 15 to 20 minutes at a time. Tr. 58, 383. The remainder of the cited medical evidence does not restrict Mileski's ability to sit. It reveals, however, that he struggled to lift, stand, and climb stairs, which the RFC accommodates by restricting Mileski to sedentary work and only occasionally climbing stairs. *See, e.g.*, Tr. 238, 259, 280, 316, 318.

Moreover, the ALJ's decision extensively cites and summarizes the medical evidence, and she noted multiple times that although Mileski demonstrated physical impairments, he also exhibited normal examination findings like full functioning and strength in his extremities. *See* Tr. 25. The ALJ also pointed out that despite Mileski's history of mental impairments and regular difficulties with mood and affect, he exhibited only "sporadic deficits" to his speech, cognition, concentration, attention, memory, insight, and judgment. *See* Tr. 26-29.

13

The ALJ properly considered the objective medical evidence in assessing Mileski's credibility because it "is a useful indicator to assist [the ALJ] in making reasonable conclusions about the intensity and persistence of [the claimant's] symptoms and the effect those symptoms, such as pain, may have on [his] ability to work." *See Quintana v. Berryhill*, No. 15-CV-835-FPG, 2017 WL 491657, at *5 (W.D.N.Y. Feb. 7, 2017) (citations omitted). Thus, the ALJ did not err when she found that the objective evidence weakened Mileski's credibility.

### 2. Medication and Treatment Received

The ALJ also noted that "despite allegations of marked physical and mental limitations, [Mileski] noted in 2014 that his pain medications were working well and he stated at the hearing that his medication and both group and one-on-one therapy sessions helped his mental functioning." Tr. 27 (citing Tr. 51-53, 413). Mileski faults the ALJ for citing a single treatment note that indicates that his medications were "working well," however, numerous other cited treatment notes reveal that medication relieved or controlled his anxiety and back and knee pain. *See, e.g.*, Tr. 236, 238, 246, 248, 259, 276, 280, 285, 288, 293, 301, 303, 309, 314, 316, 324, 327, 330, 333, 336, 339, 342.

The ALJ was entitled to consider medication taken and treatment received to relieve symptoms, *see* 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v), and therefore she did not err in finding that Mileski's success with medication and therapy diminished his credibility.

### 3. Daily Activities

Finally, the ALJ pointed out that Mileski's daily activities "also diminish the credibility of his allegations." Tr. 27. Specifically, Mileski testified that he "could maintain most aspects of his own personal care, help prepare meals, do laundry, leave the house, go shopping with his mother, draw, paint, watch television, talk to others on the phone, . . . attend multiple group therapy sessions

14

per week, and clean his own room." Tr. 27-28. Mileski also told the consultative examiner that he could "maintain his own care, help with cleaning, spend time with his mother, attend group therapy, watch television, and read," and he reported in 2013 and 2014 that he had friends and went fishing. Tr. 28 (citing Tr. 367, 377-78, 381, 444). The ALJ concluded that Mileski's daily activities are "consistent with an ability to perform a range of unskilled, sedentary work and are directly contradictory to [his] allegation that he was unable to work." Tr. 28.

Although the claimant "need not be an invalid" to be disabled under the Social Security Act, *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (citation omitted), the ALJ may properly consider the claimant's daily activities when assessing his credibility, 20 C.F.R. § 404.1529(c)(3)(i). Thus, the ALJ did not err in finding that Mileski's daily activities weakened his credibility.

## CONCLUSION

The Commissioner's Motion (ECF No. 11) is GRANTED and Plaintiff's Motion (ECF No. 8) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: January 29, 2018
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court